**EXHIBIT A**

JUN. 4. 2005  4:55PM     A. E. FINANCIAL                              NO. 184    P. 2

# American Express
# Financial Advisory Service Agreement



American Express Financial Advisors Inc. (the "Company"), agrees to perform financial planning services for you based on the following terms and conditions. The American Express Financial Advisory Service brochure (Form 94003) and any current supplement to such brochure (the "brochure") contain important information regarding the Financial Advisory Service Engagement options you (the "Client(s)") selected and are part of this Service Agreement ("Agreement"). No assignment of this Agreement by the Company will be effective without the Client's consent.

☐ Check here if a client check is attached.           Corporate Office Use                           FP
                                                      0 1 9 1                                       0 1 3

**Advisor Number**         **Advisor Name**
4 7 0 0 5                  Jennifer S. Wilkov

• An approved Client Profile Form 200152 for each client must be submitted prior to establishing an account.
• For address changes, submit Form 518.

### Section 1 — Advice Relationship Information
Is there an existing and undelivered Financial Advisory Service Agreement for the client(s)?    ☐ Yes*  ☑ No (If no, go to "Account Registration" below)
Have the advice needs changed from the preexisting Agreement?                                    ☐ Yes  ☐ No

*If there is an undelivered Financial Advisory Service Agreement for the client(s), all fees paid toward the undelivered services will be applied to this agreement. Enter this amount on line 2 in Section 5 – Fees on the following page.

### Account Registration — Check One
☑ Married            ☐ Individual              ☐ Dual
☐ Business/Non-profit  ☐ Estate              ☐ Revocable Trust — Attach relevant trust document pages

### Section 2 — Client Information
Account Holder Name (First, Middle Initial, Last) or Name of Business, Estate or Trust          Social Security Number or Tax ID
Joseph Levine                                                                                    111 60 3473
Co-Account Holder Name (First, Middle Initial, Last) or Principal Executor or Trustee           Social Security Number or Tax ID
Nina Chaifetz                                                                                    057 46 4096
Resident or Home Street Address (For change of address, submit Form 518)
537 Greenbush Road
City                                                                                             State    ZIP Code
Blauvelt                                                                                         NY       10913

For advisor use. IMPORTANT: Are these dual or married clients? Or have you checked Individual for the account registration for a person who is married? If the answer to either of these questions is yes, then you need to obtain both spouses' signatures on this Agreement. This requirement is to ensure regulatory compliance with the Gramm-Leach-Bliley Act (GLBA) and AEFA Privacy Policy. The only exception to this policy is for clients who are addressing Financial Position, Investment, Education, Future savings goals and Consultation advice needs only.

### Section 3 — Customer Privacy
The Company's privacy policy is set forth in "It's a Matter of Privacy" (the "Privacy Notice"), which is provided to Client along with this Agreement. The Privacy Notice explains the categories of personally identifiable information collected by the Company to provide the Financial Advisory Service, disclosures that may be made to affiliates and non-affiliates of the Company, and choices that Clients have to opt out of certain disclosures and uses of the personally identifiable information. To select one or both of the opt-out choices described in the Privacy Notice, Clients must follow the instructions provided in the Privacy Notice. The Company and the Client agree that all of the above-mentioned information and data furnished to the financial advisor, pursuant to Section 1, shall be disclosed and used by the company in accordance with the Privacy Notice. In addition, Client agrees that by purchasing the American Express Financial Advisory Service, Client is authorizing the Client's financial advisor and American Express Financial Advisors to use the information collected and provided as part of the service, to identify and recommend investment, insurance or other financial products the financial advisor and American Express Financial Advisors sell.

94003 6                                         Page 1 of 4                          (4/05)

JUN. 4. 2005 4:55PM     A. E. FINANCIAL                                   NO. 184   P. 3

Corporate Office Use
0 1 9 1                                                                         FP
                                                                                0 1 3

## Section 4 — Engagement services to be provided (see Form 94003 for further explanation)

**Engagement Period** — (check one; if nothing is selected, Annual will be the default):
☑ Annual (80)          ☐ Good Until Changed or Cancelled (GTCC) (26) (Authorized advisors only)

| Services: (Check all areas that apply. If nothing is selected, Comprehensive Financial Planning will be the default.) | Services to be provided (Annual and GTCC) | | Services in each subsequent year (GTCC only) |
|---|---|---|---|
| 1. Comprehensive Financial Planning  Covers topics 1A through 1F described below | ☐ (if selected, do not check 1A–1H) | (030) | ☐ |
| 1A. Financial Position | ☑ | (009) | ☐ |
| 1B. Income Tax Planning | ☐ | (015) | ☐ |
| 1C. Investment Planning | ☐ | (010) | ☐ |
| 1D. Retirement Planning | ☐ | (020) | ☐ |
| 1E. Protection/Family Security  Included at no charge; must choose one other area | ☐ | (005) | ☐ |
| 1F. Estate Planning | ☐ | (024) | ☐ |
| Check 1G and/or 1H only if applicable: | | | |
| 1G. Education Goals | ☐ | (011) | ☐ |
| 1H. Future Savings Goal | ☐ | (018) | ☐ |
| 2. Specialized Needs (Authorized advisors only): | | | |
| 2A. Small Business | ☐ | (060) | ☐ |
| 2B. Divorce Financial Services | ☐ | (068) | N/A |
| 2C. Consultation (For Short-Term and Interim Needs)  Includes advice on one or more short term, specific decisions or financial topics not covered in 1A – 1H; describe here: | ☐ | (017) | N/A |

## Section 5 — Fees

|  | First Year (Annual and GTCC) | Subsequent Year (GTCC only) |
|---|---|---|
| 1. Total Fee (Iowa clients add 5%): ........................... $  If $10,000 or greater, attach RP Approval Form 94160 | 2500.00 | $ |
| 2. Less fees from an undelivered Financial Advisory Service Agreement ............ ($ | ) | N/A |
| 3. Less Promotions (only one is allowed) ........................... ($  ☐ Alliances (e.g., Costco) (attach certificate)  ☐ Marketing programs (attach certificate)  ☐ AEFA employee (50%) or AEFA retiree (20%)  ☐ FEPS  Promotion ID, FEPS ID or AEFA Employee ID: | ) | ($                     )  (AEFA employee and retiree only) |
| 4. Less Membership Rewards voucher (attach voucher) ............. ($ | ) | N/A |
| 5. Total amount due from client ........................... $ | 2500.00 | $ |

## Section 6 — Funding information

☐ Check
☐ Payroll Deduction (available to some FEPS clients)
☑ One time American Express® Card payment        Expires
3727 652847 3 30 22                              0906
☐ Recurring American Express Card Payment (attach Form 8108)

**Redemption:**
☐ Form F119 – if from Direct-at-Fund AXP Mutual Fund or Certificate
☐ Form 33442 – if from Annuities
☐ Form 200184 – if from Brokerage/SPS/ONE
☐ Form 200433 – Systematic Payment
☐ Letter of instruction (include source account, amount and client signature)
☐ Phone/Fax

94003 G                              Page 2 of 4                (4/05) ●

JUN. 4. 2005  4:55PM      A. E. FINANCIAL                                        NO. 184    P. 4

| | Corporate Office Use | FP |
|---|---|---|
| | 0 1 9 1 | 0 1 3 |

ADVISOR USE ONLY: ENTER ALL ANTICIPATED DELIVERY METHODS (Used for internal research only — not material to this Agreement)

**Primary Deliverable** (check at least one)

**Supporting Documentation / Calculators**
Check all that may apply, but do not use as stand-alone deliverables

| Primary Deliverable | | Supporting | | Supporting | |
|---|---|---|---|---|---|
| FASware | (070) ☐ | Principia (Morningstar) | (101) ☒ | Sales Illustrations (AssetpLink USA, Disability, Annuity, LTC, Other) | (141) ☒ |
| FASware SBD | (083) ☐ | InvestmentView (Thomson Financial) | (102) ☒ | Pension Dist. Planner (Brentmark) | (162) ☐ |
| Apex Select | (069) ☐ | StockOpter (Authorized advisors only) | (105) ☐ | NumberCruncher (Leimberg) | (191) ☐ |
| Advisor Workstation Goal Planner | (161) ☐ | Portfolio Service Tool (Use only if client also has SPS account) | (106) ☐ | Microsoft Office Suite (Word, Excel, PowerPoint) | (198) ☐ |
| Advisor Created — Proposal | (087) ☐ | Foundation Tools (AdvisorLink) | (107) ☒ | Divorce Financial Analysis | (155) ☐ |
| Advisor Created — Letter | (072) ☒ | Advisor Workstation (Morningstar) | (108) ☒ | Expert Witness Service | (156) ☐ |
| AEFA AllocationMaster | (040) ☐ | IRA Analyst (AdvisorLink) | (121) ☐ | — approved | ☐ |
| Luthen PPP | (073) ☐ | | | — approved | ☐ |

Reminder: All advisor created deliverables must comply with Bulletin 4342.

**Section 7 — Disclosure of interest and capacity**

The financial advisor will or may recommend that Client purchase or sell investments and enter into other financial transactions. Client will have no obligation hereunder or otherwise to follow any such recommendations. If the Client does enter into one or more transaction(s) recommended by financial advisor, then, in addition to the compensation provided for above, financial advisor will receive a commission or other financial benefit as a consequence of the transaction.

No assignment of the Agreement by the Company will be effective without Client's consent.

After looking at all of Client's financial data, the financial advisor may find it necessary to recommend further assessment in a specific area that has not already been designated. If Client agrees, Client will be asked to sign a new Agreement and pay the additional fee. Under those circumstances this Agreement will be null and void.

Client's service will address Client's financial concerns based on Client's current financial situation and Client's future needs and objectives. The service will be based on the personal financial information that Client provides to the financial advisor. It also will be based on assumptions that Client selects and certain other planning assumptions determined by the Company. For the service, the overall rate of return used in determining net worth and cash flow beyond the current year will be calculated based on Client's risk tolerance toward achieving each goal selected. Client's assumed average tax rates and global inflation rates specific to each goal that Client selects.

Client recognizes that the value and usefulness of the Financial Advisory Service will be dependent upon information that he/she provides and upon his/her active participation in the formulation of financial planning objectives and in the implementation of plans to attain those objectives. If required, Client will be asked to complete a detailed questionnaire provided by the financial advisor. Client will also provide copies of financial documents as the financial advisor may reasonably request in order to permit complete evaluation and preparation of recommendations for Client.

Client agrees to discuss his/her requirements, objectives and projected future needs candidly with the financial advisor and to promptly inform financial advisor of material changes in circumstances, needs, objectives and other information Client previously provided to the financial advisor. Client further agrees that neither the financial advisor nor the Company shall have any liability for Client's failure to promptly inform the financial advisor of material changes in Client's financial circumstances that may affect the manner in which Client's assets are allocated. The financial advisor shall have no obligation to make any recommendation or give any financial advice to Client that, in the sole judgment of the financial advisor, would be impracticable, unsuitable, unattainable or undesirable. It is understood that the financial advisor provides financial services of the type contemplated hereunder, as well as other financial services for a number of clients.

Concurrently with receipt by Client of the agreed upon services, Client may receive, without charge, if previously requested, a life insurance analysis provided by a licensed life and disability agent. The financial advisor will receive no compensation on account of any life insurance analysis and/or recommendations provided to Client, but may receive compensation for insurance products actually purchased. The Company does not provide insurance counseling, legal advice or document preparation as part of this service. The Company does not monitor the day-to-day performance of the Client's specific investments.

Company is required by law to obtain certain personal information from Client which will be used by Company to verify Client's identity. If Client does not provide the required information to Company, Company may be unable to open Client's account. If Company is unable to verify Client's identity, Company reserves the right to close Client's account or take such other steps as Company deems reasonable.

**Insurance and annuity products**

Client understands and acknowledges that with the sale of life insurance and annuity products, the American Express financial advisor selling the life insurance or annuity product is the appointed agent of the insurer and receives compensation from the insurer for the sale and service of that product. This compensation is separate from and in addition to any fee Client pays for financial advisory or planning services and may vary depending on the type or size of the life insurance or annuity product that Client purchases, the insurer that issues the product, the total number of life insurance and annuity products sold by the financial advisor for that insurer, and other factors. This compensation typically will increase as the size of the life insurance product or annuity product that Client purchases, or the amount of the payments that Client makes on that product, increases. Generally speaking, the compensation that the financial advisor will receive is dependent on a relevant compensation formula.

The financial advisor typically receives more compensation from the sale of life insurance and annuity products than from the sale of other financial products such as mutual funds. As a result, the financial advisor typically will have a financial incentive to recommend that Client purchase a life insurance product or annuity product instead of another financial product such as a mutual fund.

**Retirement Accounts**

Client agrees that neither the financial advisor nor the Company is acting as a fiduciary within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA) or Internal Revenue Code of 1986, including with respect to asset allocation services provided Client, and that financial advisor and the Company are not providing investment advice for a fee that will be the primary basis for Client's investment decisions on IRA, TSA, government plan or ERISA (e.g., 401(k)) assets. To the extent an asset allocation service identifies any specific investment alternative, Client understands that other investment alternatives having similar risk and return characteristics may be available, and that Client's plan sponsor, for government or ERISA plans, or the financial advisor can assist Client in obtaining information on other potential investment alternatives.

84003 0                                               Page 3 of 4                                               (4/05)

JUN. 4. 2005 4:56PM     A. E. FINANCIAL                                  NO. 184    P. 5

Corporate Office Use                                FP
.0 1 9 1.                                           0 1 3

### Section 8 — Arbitration

Any controversy or claim arising out of or relating to this contract or the breach thereof, shall be settled solely by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Unless otherwise agreed to by all of the parties to the arbitration (including without limitation the Company and the Client, the American Arbitration Association shall be the sole venue for resolving claims arising out of or relating to this Agreement, and all of the parties to the arbitration (including without limitation the Company and the Client), irrevocably waive trial by jury in any action, proceeding or counterclaim, whether at law or in equity. This paragraph does not constitute a waiver of any right of private claim or cause of action provided by the Investment Advisers Act of 1940.

If either Client or Company, its employees or independent contractors elects to resolve a claim by arbitration, that claim shall be arbitrated on an individual basis. There shall be no right or authority for any claims to be arbitrated on a class action basis or bases involving claims brought in a purported representative capacity on behalf of the general public, clients or other persons similarly situated. The arbitrator's authority to resolve claims is limited to claims between the parties to the arbitration, (including the Client and the Company) alone, and the arbitrators authority to make awards is limited to the parties to the arbitration (including to the Client and the Company) alone. Furthermore, claims brought by Client against Company, its employees or independent contractors, or by Company against Client, may not be joined or consolidated in arbitration with claims brought by or against someone other than Client, unless agreed to in writing by both Client and Company, its employees or independent contractors.

### Section 9 — Signature and Taxpayer Identification Number Certification

By signing below, I acknowledge that I have received and read the Company's brochure (Form ADV), including the terms and conditions, and I hereby consent to these terms and conditions with full knowledge and understanding of the information contained in the brochure.

Under penalties of perjury, I certify that:

1. The number shown on page one of this form is my correct taxpayer identification number, and
2. I am not subject to backup withholding because (a) I am exempt from backup withholding, (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the Internal Revenue Service has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien).

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

Client's Name: Joseph Levine
Client's Signature: X [signature]       Date: 6/23/05

Client's Name: Nina Chaifetz
Client's Signature: X Nina Chaifetz      Date: 6/23/05

Signed at:
City: Blauvelt                           State: NY

Team ID:
Servicing Advisor Signature: X Jennifer S. Wilkov
American Express Financial Advisors Inc.
American Express Financial Advisory Service
Advisor Number: 47005

Comp %: 100    Area Office Number: 629    Phone Number: 212 719 0099    Ext: 223

Team ID:    Advisor 2 Name:                                    Advisor 2 Number:
Comp %:     Area Office Number:    Phone Number:               Ext:

84003 O                    Page 4 of 4                    (4/05)