UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SCOTT CHARNEY, et al.,                                    :

                                                          :        REPORT AND
                                                                   RECOMMENDATION
                          Plaintiffs,                     :        07 Civ. 6272 (AKH) (GWG)

        -v.-                                              :

CARLA ZIMBALIST, et al.,                                  :

                                                          :

                          Defendants.
----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        The plaintiffs in this action brought claims for federal securities fraud and common law

fraud under New York law, among other causes of action, against Jennifer Wilkov and other

defendants relating to a fraudulent real estate investment scheme.  Plaintiffs have moved for

summary judgment against Wilkov, who is proceeding pro se, and a decision has already been

rendered finding her liable for fraud.  In the instant motion, plaintiffs move for summary

judgment on damages.[1]  For the reasons that follow, the plaintiffs' motion should be granted.

        I.        BACKGROUND

        The issues resolved regarding Wilkov's liability are described in a prior decision.  See

Charney v. Zimbalist, 2015 WL 4597538 (S.D.N.Y. July 30, 2015), adopting in part 2014 WL

---

        [1] See Affidavit of Scott A. Brody, Esq., filed September 18, 2015 (Docket # 333) ("Brody
Aff."); Amended and Supplemental Affidavit of Scott A. Brody, Esq., filed February 1, 2016
(Docket # 356) ("Am. Brody Aff."); Defendant Wilkov's Response and Opposition to Plaintiffs'
Statement of Damages, filed February 23, 2016 (Docket # 358) ("Def. Mem."); Reply Affidavit
of Scott A. Brody, Esq., filed February 29, 2016 (Docket # 359) ("Reply Brody Aff.");
Plaintiffs' Reply Memorandum of Law, filed February 29, 2016 (Docket # 360) ("Reply
Mem.").  As described in a prior Court order, the current submissions represent a
supplementation of plaintiffs' earlier motion for summary judgment.  See Order, filed August 7,
2015 (Docket # 326).

5064860 (S.D.N.Y. Sept. 29, 2014).  Familiarity with this decision is assumed.

In brief, Wilkov has been found liable for committing federal securities fraud and common law fraud under New York law based on investments she solicited in 2005 to fund a fraudulent real estate scheme.  See Charney, 2014 WL 5064860, at *13-25.  On January 22, 2008, Wilkov pled guilty in New York State Court to one count of violating N.Y. Penal Law § 190.65(1)(b) ("Scheme to Defraud in the First Degree"), and other fraud-related counts under N.Y. General Business Law, for actions that formed the basis of the claims in this case.  See Transcript of Guilty Plea Before the Hon. Bonnie Wittner, dated January 22, 2008 (annexed as Ex. L to Notice of Motion, filed July 12, 2010) (Docket # 111) ("Plea Tr.").  Wilkov's plea agreement required her to make restitution payments to the victims of her fraud.  See Plea Tr. at 2-3.

On July 9, 2007, the victims of the scheme filed this lawsuit against Wilkov and others, including Wilkov's employer at the time of the fraud, Ameriprise Financial, Inc.  See Complaint, filed July 9, 2007 (Docket # 1).  Ameriprise Financial reached a confidential settlement with the plaintiffs and was terminated as a party in September 2009.  See Am. Brody Aff. ¶ 6(c); Memorandum Endorsement, filed August 19, 2015 (Docket # 328).

During the years that followed, the plaintiffs received payments from the Ameriprise settlement as well as restitution payments from Wilkov.  The restitution was paid by means of payments from the New York County District Attorney's Office or from the non-profit group Safe Horizon.  See id. ¶ 6(a)-(d).

Recognizing that they may not collect twice for the same injury, see Am. Brody Aff. ¶ 4(a), plaintiffs now seek a judgment against Wilkov for the unpaid balance of their investments, after deducting the payments they received as either restitution or through settlement.  They also

seek pre-judgment interest.

II.     LAW GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Fed. R. Civ. P. 56(a) provides that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) (citation omitted); see also Fed. R. Civ. P. 56(c)(4) (parties shall "set out facts that would be admissible in evidence.")

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed," and the court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," Anderson, 477 U.S. at 256, and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citation omitted).  Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (alteration in original) (quoting Celotex, 477 U.S. at 322).  Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a

3

genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

Pro se parties are entitled to special solicitude.  See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006).  Nonetheless, "[p]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." Goldstein v. Solucorp Indus., Ltd., 2015 WL 6143813, at *3 (S.D.N.Y. Oct. 16, 2015) (citation omitted and punctuation altered).

III.     DISCUSSION

Plaintiffs have filed affidavits that detail: (a) the amount of money each plaintiff invested; (b) the amount of money each plaintiff received as restitution from the District Attorney's office; (c) the amount of money each plaintiff received as restitution from Safe Horizon; and (d) the amount of money that each plaintiff received from Ameriprise as a result of the settlement. See Affidavits (annexed as Ex. C to Am. Brody Aff.).  Plaintiffs have also prepared spreadsheets that repeat these numbers and calculate the prejudgment interest owed to each plaintiff. See Spreadsheets (annexed as Ex. A to Am. Brody Aff.), at R1, R2.  Although the governing provision states that interest may be "computed from the earliest ascertainable date the cause of action existed," N.Y. CPLR § 5001, plaintiffs have requested interest only from the date of the final investment made by any plaintiff, which is November 4, 2005.  Am. Brody Aff. ¶ 6(a).  In their interest calculations, plaintiffs have also reduced the principal upon which interest accrued, based on the various payments made in restitution or by settlements.  In an effort to simplify the calculation process, plaintiffs have applied these various reductions in principal on dates prior to the actual receipt of the restitution and settlement funds by plaintiffs

— a calculation method that benefits Wilkov.  See Am. Brody Aff. ¶ 6(a)-(e).[2]

Wilkov does not dispute the accuracy of the calculations proposed by plaintiffs, and the court's independent review finds them to be essentially correct.  Thus, we adopt and incorporate the calculations and damages requests in plaintiffs' spreadsheets as complete and accurate.  The total amounts due, including prejudgment interest, are as follows:

| | |
|---|---|
| Karen Fusco | $160,497.24 |
| Bonnie & Wayne Vartabedian | $51,380.65 |
| Constance Simons | $26,103.26 |
| Laura Flax | $26,103.26 |
| Jay Coon | $51,380.65 |
| Neil & Marni Blitz | $26,103.26 |
| Joseph Levine & Nina Chaifetz | $102,759.37 |
| Ed & Anne Haran | $51,380.65 |
| Kathy Pashuck | $51,380.65 |
| Bruce Fuller | $77,070.01 |
| Scott Charney | $82,974.83 |
| Diva Goodfriend-Koven | $102,759.37 |
| Toni Allen | $26,103.26 |
| Elizabeth Tymczyszyn | $25,664.19 |
| Gata Realty, LLC | $206,967.32 |

---

[2] Thus, the plaintiffs' chart assumes that all restitution payments from the District Attorney's office were made by February 8, 2008, even though this is merely one day after the date of a District Attorney memorandum that directed restitution payments be made to plaintiffs. Am. Brody Aff. ¶ 6(b).  The chart assumes all settlement payments from Ameriprise were made as of May 9, 2008, even though this is merely the date the total settlement amount was received by plaintiffs' counsel, not the individual plaintiffs.  Id. ¶ 6(c).  Finally, the chart assumes all Safe Horizon restitution funds were paid as of June 1, 2008, although this is simply the date of the order directing Safe Horizon to distribute funds to the plaintiffs.  Id. ¶ 6(d).

5

| | |
|---|---|
| Scott Edvabsky | $51,380.65 |
| Anthony & Barbara Corsaro | $51,380.65 |
| Gary Zaccaro | $82,243.08 |
| Bruce Lichetenstein | $77,070.01 |
| Robert Anarumo | $51,380.65 |

See Spreadsheets (annexed as Ex. A to Am. Brody Aff.), at R2.  The total of these amounts is $1,382,083.01.[3]

While Wilkov has not contested these amounts with any admissible evidence, she makes various legal arguments as to why no further damages or more limited damages should be awarded.  Specifically, Wilkov argues (1) that the doctrines of collateral estoppel and res judicata prevent plaintiffs from seeking damages in this matter; (2) that plaintiffs have failed to provide admissible evidence to support their claim of damages; and (3) that no interest should be included in any damages award, or if the court does award interest, that it should be granted at a lower rate than that requested by plaintiffs.  We address each argument in turn.

A.    Collateral Estoppel

Wilkov argues that the doctrine of collateral estoppel bars this suit.[4]  See Def. Mem. at

---

[3]  We have granted the request of Ameriprise Financial Services, Inc. (Docket # 330) to not reveal the individual components of the calculations of damages both in this Report and Recommendation and in the papers filed with the Court.  We have done so because the parties agreed to keep the settlement amount confidential and there is no dispute regarding the amounts Ameriprise paid to the plaintiffs.  See generally Gambale v. Deutsche Bank AG, 377 F.3d 133, 143 (2d Cir. 2004) (no presumption of public access to settlement amounts).

[4]  Although Wilkov also invokes the doctrine of res judicata, it is obviously inapplicable.  Res judicata "provides that a final judgment on the merits bars a subsequent action between the same parties over the same cause of action."  Channer v. Dep't of Homeland Sec., 527 F.3d 275, 279 (2d Cir. 2008) (citations omitted).  No prior action between the plaintiffs and Wilkov has ever taken place.

13-18.  Now commonly referred to as "issue preclusion," the doctrine of collateral estoppel

"requires federal courts to give the same preclusive effect to state court judgments that those

judgments would be given in the courts of the State from which the judgments emerged."

Kremer v. Chemical Const. Corp., 456 U.S. 461, 466 (1982); accord Barnes v. N. Y. State Div.

of Human Rights, 2016 WL 110522, at *4 (S.D.N.Y. Jan. 8, 2016).  Under New York law,

collateral estoppel applies where: "(1) the issue in question was actually and necessarily decided

in a prior proceeding, and (2) the party against whom [collateral estoppel] is asserted had a full

and fair opportunity to litigate the issue in the first proceeding."  Hoblock v. Albany Cty. Bd. of

Elections, 422 F.3d 77, 94 (2d Cir. 2005) (citation and internal quotation marks omitted).

Wilkov's rationale is difficult to follow, but it appears that her argument is that because

the state court required her to pay restitution of only the amounts she personally received from

the scheme, amounting to $142,000, no additional damages should be awarded in this case.  Def.

Mem. at 17.  She argues that because the instant matter "is based on the same facts . . .

concerning the issue in the prior litigation, any damages in this federal proceeding must be

precluded by and limited to the amount . . . ordered in the state court."  Id.

This argument is rejected.  Wilkov does not explain how the plaintiffs in the instant

litigation "had a full and fair opportunity to litigate the issue" in the criminal proceeding.

Hoblock, 422 F.3d at 94.  Obviously, the plaintiffs were not a party to that proceeding.

Moreover, the section of New York Penal Law that provides for restitution specifically provides

that "payment made as restitution or reparation . . . shall not limit, preclude or impair any

liability for damages in any civil action or proceeding for an amount in excess of such payment."

N.Y. Penal Law § 60.27(6); accord City of N.Y. v. College Point Sports Ass'n, Inc., 61 A.D.3d

33, 44-45 (2d Dep't 2009).  Consistent with the plain language of this provision, New York

courts have long "recognized that Penal Law § 60.27 'secures a victim's independent, parallel

right also to pursue a defendant civilly should there be a deficiency in the restitution amount."

Marion Blumenthal Tr. v. Arbor Commercial Mortg., LLC, 133 A.D.3d 419, 420 (1st Dep't

2015) (quoting People v. Wein, 294 A.D.2d 78, 85 (1st Dep't 2002)) (further citations omitted);

accord Farber v. Stockton, 128 Misc. 2d 560, 562 (Civ. Ct. 1985) (defendant's payment of

restitution after a criminal conviction did not collaterally estop plaintiff from seeking damages in

subsequent civil case).  Plaintiffs in the present action are seeking damages to the extent the

harm caused by the defendants was not already satisfied by the prior restitution or settlement

payments of the other defendants.  Accordingly, the fact that Wilkov paid some restitution to the

plaintiffs does not prevent them from seeking judgment for the additional damages they

suffered.[5]

### B.  Admissibility of Plaintiffs' Evidence

Wilkov argues that there is no "admissible evidence in the record from the summary

judgment briefing that supports the amount claimed."  Def. Mem. at 18 (citations omitted).

Specifically, Wilkov contends that the documents submitted by plaintiffs as part of the motion

"should have been submitted during discovery and included in [the plaintiffs'] prior summary

judgment briefing, not now."  Id. at 19 (emphasis omitted).  In fact, the Court specifically

---

[5] In her argument discussing collateral estoppel, Wilkov also notes that she has a right to seek contribution against her co-defendants.  See Def. Mem. at 17-18.  Any right Wilkov may have had in this regard is irrelevant as she has never made a claim for contribution against these defendants.  In any event, a plaintiff has a "right to collect the full judgment from [a tortfeasor]," irrespective of the tortfeasor's rights against any of her joint wrongdoers.  See Siler v. 146 Montague Assocs., 228 A.D.2d 33, 38 (2d Dep't 1997); accord Ravo v. Rogatnick, 70 N.Y.2d 305, 313 (1987) (under the concept of joint and several liability, the degree of fault found by a jury "merely defines the amount of contribution defendants may claim from each other, and does not impinge upon plaintiff's right to collect the entire judgment award from either defendant.") (citing N.Y. CPLR § 1402).

allowed the plaintiffs to supplement their prior summary judgment briefing.  See Order, filed

August 7, 2015 (Docket # 326).  While Wilkov complains that the supplementation does not

contain citations to the record, Def. Mem. at 18, plaintiffs' submissions are in fact replete with

citations to the record.  See, e.g., Plaintiffs' Financial Transfer Documents (annexed as Ex. B to

Brody Aff.); Am. Brody Aff.

　　　　More significantly, plaintiffs have submitted admissible evidence such that no reasonable

jury could fail to find that the plaintiffs had been damaged in the amounts they claimed.

Plaintiffs' evidence includes (1) sworn affidavits from each plaintiff attesting to the amount each

invested in the underlying criminal fraud and the amount each received in restitution or

settlement, see Affidavits (annexed as Ex. C to Am. Brody Aff.); and (2) copies of checks

plaintiffs received from the District Attorney's office related to restitution payments, see Checks

(annexed as Ex. B to Am. Brody Aff.).  Plaintiffs have also provided spreadsheets that

summarize these figures, see Spreadsheets (annexed as Ex. A to Am. Brody Aff.).  Wilkov has

submitted literally no admissible evidence whatsoever to dispute the figures proffered by the

plaintiffs.

　　　　Wilkov argues that certain items such as wire transfer confirmations were not produced

during discovery.  See Def. Mem. at 20-21.  But Wilkov articulates no reason why the Court

should not consider this evidence notwithstanding these alleged failures or why she has been

prejudiced by the presentation of this evidence now.  Nor has she filed an affidavit that would

justify any need on her part to conduct discovery of her own in order to oppose the plaintiffs'

motion.  See Fed. R. Civ. P. 56(d); Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d

Cir. 1994)) ("[T]he failure to file [an affidavit justifying the need for discovery] is itself

sufficient grounds to reject a claim that the opportunity for discovery was inadequate.") (citing

cases).  Accordingly, we accept plaintiffs' evidence as properly submitted.[6]

      C.     Prejudgment Interest

Wilkov's final argument is that the Court should deny plaintiffs' request for prejudgment

interest, or award such interest at a rate lower than the requested 9% per annum.

It is well-settled that New York law applies to the calculation of prejudgment interest for

state law claims heard in federal court.  See Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650

(2d Cir. 1999) (citing Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998)).  Here,

plaintiffs have obtained a judgment on liability not only for securities fraud pursuant to § 10(b)

of the Securities Exchange Act and S.E.C. Rule 10b–5 but also for common law fraud under

New York law.  Charney, 2015 WL 4597538, at *2-3, *5.  Thus we apply New York law to the

claim for prejudgment interest.  See generally Action S.A. v. Marc Rich & Co., Inc., 951 F.2d

504, 508 (2d Cir. 1991) (where plaintiff is awarded damages on an "action at law, . . . the court

must apply the [New York] statutory rate of interest").  New York law provides for prejudgment

interest at 9%.  N.Y. CPLR. § 5004.

While Wilkov argues that the Court maintains discretion in awarding prejudgment

interest, Def. Mem. at 23-24, "awarding pre-judgment interest on damages awarded for fraud is

mandatory," In re Crazy Eddie Sec. Litig., 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996) (citing

Manufacturers Hanover Tr. Co. v. Drysdale Sec. Corp., 801 F.2d 13, 28 (2d Cir. 1986))

---

      [6] We also note that Wilkov has disputed the inclusion of the "Retainer Adjustment" fees column in plaintiffs' evidentiary submission.  See Def. Mem. at 22.  As noted by plaintiffs, Reply Mem. at 7-8, the column in the spreadsheet at issue, see Spreadsheets (annexed as Ex. A to Am. Brody Aff.), at R1, does not represent an additional payment being demanded of Wilkov, but rather describes settlement payments from Ameriprise that were apportioned to legal expenses.  Reply Mem. at 7-8.  Plaintiffs have deducted the entirety of the amount of the Ameriprise settlement, including the amount apportioned for legal fees, from their claims against Wilkov.  See id.; Spreadsheets (annexed as Ex. A to Am. Brody Aff.), at R1, R2.

(additional citations omitted).  Wilkov's reliance on <u>Henry v. Champlain Enters., Inc.</u>, 445 F.3d 610 (2d Cir. 2006) and <u>Jones v. UNUM Life Ins. Co. of America</u>, 223 F.3d 130 (2d Cir. 2000) is inapposite because both cases dealt with the discretion district courts hold in awarding prejudgment interest in suits under a federal statute, not a New York state law claim.  <u>Jones</u>, 223 F.3d at 139; <u>Henry</u>, 445 F.3d at 622-23.  Although "[p]re-judgment interest on federal securities claims, unlike on New York state law claims, is not mandatory," <u>Manufacturers Hanover Tr. Co.</u>, 801 F.2d at 28, we are bound to apply the New York statutory prejudgment interest rate to plaintiffs' state law fraud claims.  Accordingly, Wilkov's request that prejudgment interest be denied or reduced is rejected.

IV.     <u>CONCLUSION</u>

    Judgment should be awarded in favor of the plaintiffs and against defendant Jennifer S. Wilkov in the amount of $1,382,083.01.

**<u>PROCEDURE FOR FILING OBJECTIONS TO THIS<br>REPORT AND RECOMMENDATION</u>**

    Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Alvin K. Hellerstein at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Hellerstein.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile,</u>

11

P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: July 26, 2016
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:

Jennifer S. Wilkov
8225 5th Avenue
Suite 416
Brooklyn, NY 11209

12